IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
STATESVILLE DIVISION
CIVIL DOCKET NO.: 5:09CV115-V

| | |
|---|---|
| **DEXTER S. HOLMES,** )<br>       **Plaintiff,** )<br>)<br>v. )<br>)<br>**J.C. PENNEY CORPORATION, INC.,** )<br>       **Defendant.** )<br>_____ ) | **Memorandum and Order** |

**THIS MATTER** is before the Court on the motion of Defendant JCP Logistics, LP ("J.C. Penney")[1] as well as all related memoranda in support and in opposition. (Documents ##3,4,9,10). J.C. Penney moves to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## I.  Background

Plaintiff Dexter S. Holmes ("Holmes") brings this action pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, as amended, and 42 U.S.C. §1981 alleging racial discrimination and retaliation by his former employer, J.C. Penney.

The factual allegations recited herein, taken from Plaintiff's Amended Complaint, are accepted as true for purposes of the instant Rule 12(b) analysis:[2]

Plaintiff Holmes began working with J.C Penney in May 2005. (Am. Compl. ¶8(a)).

---

[1] J.C. Penney was incorrectly identified within the original Complaint as Defendant "J.C. Penney Corporation, Inc."  The magistrate judge authorized amendment of the Complaint to include the correct name of the defendant-entity.  (Document #12)

[2] *See* Schatz v. Rosenberg, 943 F.3d 485, 489 (4th Cir. 1991).

"Plaintiff performed his job responsibilities and received evaluations of above expectations." (Am. Compl. ¶8(b)). Holmes' complains he has "consistently applied for promotions and has been overlooked in favor of Caucasian employees or applicants." (Am.Compl. ¶8(c)). Holmes has identified three (3) specific instances where he was not promoted. On two of these three occasions, Plaintiff was passed over for promotion in favor of a Caucasion employee or applicant. (Am. Compl. ¶¶8(d) - (m)).

Holmes filed a charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging racial discrimination on August 28, 2008. (Am.Compl. ¶¶3, 8(o)). Following the EEOC charge, J.C. Penney "began to harass Plaintiff." (Am.Compl. ¶8(o)).

In September 2008, Plantiff Holmes was asked to sign a "Universal Acknowledgement Form" (hereinafter "UAF") or face termination.[3] (Am. Compl. ¶8(r), (q)). The UAF required acknowledegment of its various policies, procedures, and terms and conditions of employment deemed important by J.C. Penney. (Def.'s Mem in Supp. Exh. 1) Plaintiff refused J.C. Penney's request. (Am.Compl. ¶8(r)). A few months later, on February 8, 2009, Holmes was, in fact, terminated from his employment "for not signing the said Agreement." (Am.Compl. ¶8(r)).

Holmes commenced this litigation on October 23, 2009, seeking issuance of a declaratory judgment, injunctive relief, monetary damages, and attorneys' fees and costs. (Am.Compl. ¶¶1,15,

---

[3] The record before the Court does not make clear why Holmes was asked to provide J.C. Penney written acknowledgement of the UAF in September 2008, several years into Plaintiff's employment with Defendant. Holmes also initiated contact with the EEOC in August 2008 to assert his claim of racial discrimination. However, the UAF includes a typewritten notation in the top right-hand corner stating: "Effective Date: 06/12/2008," which sheds some light on the timing of J.C. Penney's request. (Def.'s Mem in Supp. Exh. 1)

Prayer for Relief, 1-4). In the event the Court deems his Amended Complaint deficient, Plaintiff requests leave to amend a second time. (Pl.'s Resp., 5)

Before bringing this civil action, the EEOC issued a right to sue letter to Holmes. (Am. Compl. ¶3). Holmes filed this action within ninety (90) days of receiving the letter. (Am. Compl. ¶3). Accordingly, Holmes has exhausted his available administrative remedies under Title VII.

## II. Standard of Review

A Rule 12(b)(6) motion tests the legal and factual sufficiency of a complaint. *See* Ashcroft v. Iqbal, 129 S.Ct 1937, 1949 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), *cert.granted*, 2011 WL 500227 (U.S. June 27, 2011) (No. 10-1016). In reviewing a motion made under this rule, a judge must accept as true "all of the *factual* allegations contained in the complaint," Iqbal, 129 S.Ct at 1949-50. The factual allegations are viewed in the "light most favorable to the plaintiff." Goodman v. Wexford Health Sources, Inc., 425 Fed. Appx. 202, 203 (4th Cir.2011) (*unpublished*) (*quoting* Schatz, 943 F.3d at 489; *citing* Smith v. Smith, 589 F,.3d 736, 738 (4th Cir.2009)). The Court is not bound to accept a complaint's legal conclusions. Iqbal, 129 S.Ct at 1949-50. Similarly, a court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir.2008); Iqbal, 129 S.Ct at 1949-50. Rather, a complaint must plead facts sufficient "to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555; Iqbal, 129 S.Ct at1949. Even if a complaint includes well-pleaded factual allegations, the allegations must plausibly give rise to an entitlement to relief. *See* Iqbal, 129 S.Ct at1951-52. Alleging a "mere possibility of misconduct" is not enough to survive Rule 12(b)(6) scrutiny. Iqbal,

129 S.Ct. at 1950.

### III. Discussion

Title VII provides that it is an unlawful employment practice to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin."[4] 42 U.S.C. § 2000e-2(a). While not limited to the employer-employee context, Title 42, United States Code, Section 1981 likewise requires equal rights under the law.[5] The analyses under Title VII and Section 1981 effectively merge into one inquiry as both statutes prohibit discrimination due to race. *See* Bryant v. Aiken Reg'l Med. Ctr, Inc., 333 F.3d 536, 543-45 (4th Cir. 2003); Bryant v. Bell Atl. Md., Inc., 288 F.3d 124, 133 n. 7 (4th Cir.2002) (elements of a discrimination claim are the same under both Title VII and §1981); Gairola v. Va. Dep't of Gen. Servs., 753 F.2d 1281, 1285 (4th Cir.1985) (*McDonnell Douglas*[6] framework applies to § 1981 employment discrimination claims). For this reason, the

---

[4] Title VII provides in relevant part:
(a) It shall be an unlawful employment practice for an employer –
    (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race;
    (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race.

[5] Section 1981 reads in pertinent part:
(a) Statement of equal rights
    All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

[6] McDonnell Douglas Corp. v. Green, 411 U.S. 792, 793 (1973).

Court will refer only to Title VII, the more specific of the two statutes.

### a. Failure To Promote

By alleging discriminatory failure to promote, a litigant is asserting a form of disparate treatment. *See* Fulmore v. City of Greensboro, 2011 WL 2651106, *14 n.15 (M.D.N.C. July 6, 2011) (*citing* Anderson v. Westinghouse Savannah River Co., 406 F.3d 248, 268 (4th Cir.2005)). In order to state a race-based claim under Title VII for failure to promote, Plaintiff must allege facts which show: (1) that he is a member of a protected group; (2) that he applied for the position in question; (3) that he was qualified for the position; and (4) that he was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. Bryant, 333 F.3d at 546; Alvarado v. Bd. of Trus., 928 F.2d 118, 121 (4th Cir.1991))(successful claimant is able to show rejection in favor of someone not a member of the protected group under circumstances giving rise to an inference of unlawful discrimination). "[A]n inference of discrimination may be drawn by a showing that the employer criticized the plaintiff's performance in ethnically degrading terms, made invidious comments about others in the employee's protected group, or treated employees not in the protected group more favorably." Gorokhovsky v. City of New York, 2011 WL 2019423, *6 (S.D.N.Y. May 19, 2011) (*internal citations omitted*).

The Court presumes the first three criteria are met and supported by sufficient factual allegations given that Plaintiff Holmes is African-American, he applied for the positions in question, and evaluations indicated that he performed "above expectations."[7] The issue presented then is

---

[7] Plaintiff's qualifications for each position, like exploring the bases for Defendant's decision making, might require discovery and conversion of Defendant's Rule 12(b)(6) motion to a motion for summary judgment. *See* FED. R. CIV. P. 12(d).

whether Plaintiff alleges facts which tend to show that he was rejected for one or more positions under circumstances giving rise to an inference of unlawful discrimination and, thus, facts sufficient to produce a plausible inference of race discrimination.

Holmes first applied for a supervisory position within the jewelry department. (Am. Compl. ¶¶8(d)). The position was temporarily filled by a Caucasion male approximately two (2) months after Holmes was advised that "the Company would not hire anyone ... because of business decline." (Am. Compl. ¶¶8(e)-(g)). Defendant explained that "because of a sudden business upsurge, a supervisor was needed and the Company did not have time to post the position." (Am. Compl. ¶¶8(g)).

Next, Holmes sought and interviewed for "Lead Person" in the Loss Prevention Department. (Am. Compl. ¶¶8(h) and (i)). Holmes, who claims to have met the listed qualifications, was told on July 23, 2008 that "a decision was made to make him an external candidate." (Am. Compl. ¶¶8(j)). J.C. Penney reposted the vacancy "shortly thereafter" but ultimately no one was hired. (Am. Compl. ¶¶8(k)).

On or about July 24, 2008, Holmes was asked to serve as a temporary supervisor in the Hanging Department. (Am. Compl. ¶¶8(l)). Holmes agreed to fill in but was advised that the temporary position would still have to be posted. (Am. Compl. ¶¶8(m)). After posting the job, a Caucasion employee was selected over Holmes. (Am. Compl. ¶¶8(n)). J.C. Penney's decision prompted Plaintiff's EEOC charge. (Am. Compl. ¶¶8(o)).

As an initial matter, because the Loss Prevention Lead position was never filled, Plaintiff is less likely to be able to sustain his Title VII claim as to that employment decision. (Am. Compl.

¶8(k)) (Plaintiff is informed and believes, and therefore on information and belief alleges, that Defendant reposted a notice shortly thereafter and no one was hired.") *See* 172 A.L.R. Fed. 465 *"Requirement of Replacement by Nonprotected Individual to Establish Prima Facie Employment Discrimination Under 42 U.S.C.A § 1981, Title VII ..."* (2011). Consequently, the Court will focus on the other two incidents – namely, the failure to elevate Holmes to a supervisory position within the Jewelry and Hanging Departments.

Holmes does not allege facts which indicate he was rejected for either of these supervisory positions under circumstances giving rise to an inference of unlawful discrimination. The allegations are merely that Holmes was not selected and a member of a different race was selected. This fact is not dispositive. *See e.g.*, Fleming v. City of Oceanside, 2010 WL 5148469, *1-2 (S.D.Ca. December 14, 2010) (plaintiff's failure to promote action dismissed pursuant to Rule 12(b)(6) where the only "fact" plaintiff alleged to support racial discrimination claim was that plaintiff is white and defendant employer "intentionally preferred non Caucasian workers."). Holmes does not allege facts concerning the successful candidate's qualifications and how his own qualifications compare. *See e.g.*, Barcliff v. N.C. League of Municipalities, 2011 WL 3290578 (E.D.N.C. August 1, 2011) (dismissing failure to promote claims for failing to explain "who was selected or why the selected person was less or equally qualified, or explain why the selection produces a plausible inference of race ... discrimination") (*internal citations omitted*). Similarly, Holmes does not allege that his performance was criticized in ethnically degrading terms or that Defendant made any individuous comments about Holmes or others within the protected group. Aside from the general claim that "Plaintiff has consistently applied for promotions and has been overlooked in favor of Caucasian employees or applicants," the only conceivable allegation of disparate treatment is that Holmes was

counseled on one occasion while another employee of unknown race was not counseled following an injury he sustained during performance of a dual task. (Am.Compl. ¶8(p)).

The manner in which Defendant allegedly explained its decision-making to Holmes reveals a less than uniform response with respect to openings for management-type positions within J.C. Penney's organization. However, this conduct can be explained just as easily by the fact that Holmes was seeking *different* supervisory positions from within *different* departments of the store and, presumably, with employment decisions being made by *different* personnel. In conclusion, the conduct described within the Amended Complaint does not give rise to a plausible inference of unlawful racial discrimination. *See* Francis v. Giacomelli, 533 F.3d 186 (4th Cir.2009) (racial discrimination allegations deemed conclusory and insufficient to state Section 1981 claim where parties were of different races and only factual allegation was that defendants never initiated termination of employment action against white employees). Holmes has not sufficiently alleged a failure to promote claim.

    **b.**    **Retaliation / Discharge**

Title VII also expressly prohibits discrimination based upon the following:

(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings

It shall be an unlawful employment practice for an employer to discriminate against any of his employees . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

42 U.S.C. § 2000e-3(a).

In order to survive Rule 12(b)(6) scrutiny on his retaliation claim, Plaintiff Holmes must allege facts which show (1) that he engaged in protected activity, (2) that Defendant took material

adverse employment action against him, and (3) that a causal connection existed between the protected activity and adverse action. Hill, 354 at 298 (*quoting* King v. Rumsfeld, 328 F.3d 145, 150-51 (4th Cir. 2003)).

In this case, Plaintiff does not allege sufficient facts in support of a retaliatory discharge claim. Other than sequence, namely, that Holmes' termination followed the filing of his EEOC charge, Plaintiff does not allege any facts to show a plausible causal connection between the two events. Rather, Plaintiff's Complaint expressly states that he was discharged "for not signing the said Agreement[UAF]." (Am. Compl. ¶8(r)). Close proximity in time can give "rise to sufficient inference of causation to satisfy the *prima facie* requirement." King, 328 F.3d at 151 (holding that a two month and two week time frame between employer's notice of EEO complaint and plaintiff's termination satisfied *prima facie* causation requirement). Given Plaintiff's factual allegations, the more plausible explanation is that Holmes' termination was a direct response to Plaintiff's own insubordination, namely, his election not to review and sign the Universal Acknowledgement Form.[8] (Am. Compl. ¶8(r)) (*See* Def.'s Mem in Supp., Exh. 1). This claim must be dismissed.

### c. Title VII - Hostile Work Environment

Under Title VII, a hostile work environment claim requires Plaintiff to allege fact which indicate: (1) unwelcome harassment; (2) based on the Plaintiff's race; (3) harassment sufficiently severe or pervasive so as to create an abusive working environment; and (4) that some basis exists for imputing liability to the employer. Lowe, 292 F. Supp. 2d at 782 (*citing* Conner v. Schrader-

---

[8] Ironically, Section 1 to Part A of the UAF speaks in part to J.C. Penney's aim to provide equal terms and conditions of employment to all individuals and Associates. (Def.'s Mem in Supp. Exh. 1)

Bridgeport Int'l, Inc., 227 F.3d 179, 192 (4th Cir. 2000); *see also* Ziskie v. Mineta, 547 F.3d 220, 224 (4th Cir. 2008)).

Here, Holmes merely asserts that J.C. Penney "began to harrass" him after he filed the charge of employment discrimination with the EEOC. (Am. Compl. ¶8(o)). This claim is not supported by any specific facts or examples of alleged harrassment. Moreover, Holmes does not allege facts that could support a claim that he was subject to severe or pervasive harassment. *See e.g.*, Honor v. Booz-Allen & Hamilton, Inc., 383 F.3d 180, 190-91 (4th Cir.2004) (summary judgment context). This claim must be dismissed.

### d. Motion For Leave To Amend Complaint

At the conclusion of his responsive filing, Plaintiff requested the opportunity to amend his Amended Complaint in the event the Court finds any portion of his Amended Complaint deficient. Plaintiff did not attach a Proposed Second Amended Complaint or explain how permitting an amendment would satisfy or alleviate the concerns raised in the Defendant's motion. Under these circumstances, amendment is not warranted. *See* Francis, 588 F.3d at 193 (denying leave to amend where plaintiff's response in opposition to Rule 12(b)(6) motion concluded with a single sentence and unsupported request to amend instead of being subject to dismissal). To the extent Plaintiff moved to amend his Amended Complaint, that request is denied.

## IV. Order

**IS, THEREFORE, ORDERED** that Defendant's Motion to Dismiss is **GRANTED** as to all causes of action. Plaintiff's Amended Complaint is dismissed.

Signed: November 28, 2011

Richard L. Voorhees
United States District Judge